UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No. 12-154(FSH) |
| v. | : | **OPINION** |
| SALADEN WILLIAMS, | : | |
| Defendant. | : | January 23, 2014 |

**<u>HOCHBERG, District Judge</u>:**

This matter comes before the Court upon the Motion of Defendant Williams seeking the suppression of evidence seized from his GMC Yukon subsequent to a traffic stop. The Court has reviewed the submissions of the parties, as well as having conducted a suppression hearing on May 16, 2013, which continued on September 11, 2013.

**I.    BACKGROUND**

A vehicle operated by Saladen Williams was stopped by three New Jersey State Troopers for what the officers allege were two traffic violations, *i.e.*, failure to observe the stop sign at the corner of Clinton Avenue and South 20th Street in Newark, in violation of N.J.S.A. 39:4-144, and failure to activate a turn signal prior to making a right onto Ellis Avenue in Irvington, in violation of N.J.S.A. 39:4-126. During the traffic stop, Trooper Sardanopoli allegedly observed a handgun in plain view on the passenger side floorboard of the vehicle. The Troopers then directed the occupants of the vehicle to exit the vehicle so they could retrieve the handgun. Defendant allegedly admitted that the handgun belonged to him and consented to a search of the vehicle. During the search of the vehicle, the Troopers discovered bags of cocaine in the center console.

## II.	PROCEDURAL HISTORY

On February 29, 2012, the Grand Jury returned a one-count Indictment against Defendant, charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On January 7, 2013, Defendant filed a motion to suppress evidence of the handgun, to which the Government responded on January 9, 2013.

The Court convened a hearing to address Defendant's motion on May 16, 2013 at which it heard the testimony of Trooper Sardanopoli and FBI Special Agent Sean Lynch and the Defendant. During the May 16 hearing, an issue arose about the exact contours on the Yukon's interiour configuration, and neither side had photographs of the actual car. The Defendant stated that Defendant's family still had possession of the Yukon that was the subject of the traffic stop. Following the conclusion of testimony, the Court adjourned the hearing and directed the parties to arrange to inspect and photograph the Yukon.

In June 2013, the Government was notified by counsel for Defendant that the Yukon had been repossessed and that therefore Defendant's family no longer had access to the vehicle. The photographs had not yet been taken by either side. On July 12, 2013, this Court ordered the parties to "conduct an investigation into the facts regarding the repossessed vehicle" and to attempt to locate the vehicle and photograph it if it was indeed located. On July 25, 2013, the Government notified the Court that it had located the vehicle and was working out a date with defense counsel on which they could jointly inspect and photograph the vehicle. The parties agreed on August 15, 2013 for inspection and photographs. However, on that morning, defense counsel was no longer available so the Government proceeded to inspect and photograph the vehicle.

On September 11, 2013, the Court continued the suppression hearing. At this hearing, Williams again testified, but this time only briefly. Additionally, the Court entered into evidence the photographs of the Yukon submitted by the Government, and ordered the parties to submit additional briefs regarding their positions. The defense submitted its letter brief on September 25, 2013 and the Government submitted its brief on October 9, 2013.

### III.  STANDARD OF REVIEW

Rule 41(h) of the Federal Rules of Criminal Procedure provides "[a] motion to suppress evidence may be made in the court of the district of trial as provided in Rule 12." Fed. R. Crim. P. 41(h). Rule 12 provides that suppression motions should be made prior to trial. See Fed. R. Crim. P. 12(b)(3)(c), (f). Whether to hold an evidentiary hearing on the admissibility of contested evidence "rests in the sound discretion of the district court." *Padillas v. Stork–Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999). As a general matter, an evidentiary hearing is required in circumstances in which a defendant advances a "colorable claim" that his or her constitutional rights have been violated. *United States v. Brink*, 39 F.3d 419 (3d Cir. 1994) (holding that the District Court erred in failing to hold an evidentiary hearing where the defendant stated "a colorable claim that the government violated his constitutional right to counsel by placing him in a cell with a known informant who may have been acting as a government agent"). A claim is "colorable" if it consists "of more than mere bald-faced allegations of misconduct." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996). Thus, to warrant an evidentiary hearing, a defendant's motion must contain "issues of fact material to the resolution of the defendant's constitutional claim." *Id.*

Ordinarily, the burden of proof in a suppression motion is on the defendant. *See United States v. Lewis*, 40 F.3d 1325, 1333 (1st Cir. 1994). Where the search being challenged was made without a warrant, as is the case here, the burden shifts to the Government to demonstrate that the warrantless search was conducted pursuant to one of the exceptions to the warrant requirement. *See United States v. Herrold*, 962 F.2d 1131, 1137 (3d Cir. 1992). The Government must demonstrate by a preponderance of the evidence that the challenged evidence is admissible. *See United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974) ("The controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

## IV. DISCUSSION

Defendant moves to suppress the handgun seized during the traffic stop for two reasons: 1) that the troopers lacked a proper basis to effect the traffic stop; and 2)that they also lacked a proper basis to search Defendant's vehicle. The Government argues that Defendant's motion should be denied because the Troopers observed Defendant committing two traffic violations, "each of which provided an independent reasonable suspicion to conduct a traffic stop," and that during the stop Trooper Sardanopoli observed the handgun in "plain view."

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The lawfulness of the officers' conduct at issue herein, for Fourth Amendment purposes, turns on two considerations: 1) whether the initial stop of Defendant's vehicle was lawful, and 2) whether the officers lawfully seized Defendant's firearm. The Government seeks to justify the seizure of the handgun under the "plain view" doctrine.

### A. The Traffic Stop

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief." *United States v. Delfin–Colina*, 464 F.3d 392, 396 (3d Cir. 2006) (internal quotations and citations omitted). "It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations." *United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)). A traffic stop based upon a traffic violation "will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *Delfin–Colina*, 464 F.3d at 398 (citations omitted).

The New Jersey motor vehicle statute for failure to observe a stop sign provides that "no driver of a vehicle ... shall enter upon or cross an intersecting street marked with a "stop" sign unless the driver has first brought the vehicle... to a complete stop at a point within five feet of the nearest crosswalk or stop line marked upon the pavement at the near side of the intersecting street and shall proceed only after yielding the right of way to all traffic on the intersecting street which is so close as to constitute an immediate hazard." N.J.S.A. 39:4-144.

The New Jersey statute for failure to activate a turn signal, N.J.S.A. 39:4-126, states, in pertinent part, that "[n]o person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement."

The Court finds that the initial traffic stop was not unlawful. Trooper Sardanopoli testified that it was approximately 9:30 a.m. when he observed Defendant drive through the stop sign at the intersection of Clinton Avenue and South 20th Street. Defendant testified that he observed the stop sign but that the Troopers could not have seen him observe the stop sign because it is set back from the corner. However, this testimony is insufficient to call into doubt Trooper Sardanopoli's testimony regarding Defendant's failure to stop. The statute mandates that a driver come "to a complete stop at a point within five feet of the nearest crosswalk or stop line marked upon the pavement." N.J.S.A. 39:4-144. Therefore, the fact that Williams may have come to a complete stop several feet back from the stop sign is of no moment because he was required to come to a complete stop within five feet of the unmarked crosswalk at the corner and not several feet back from the corner where the stop sign is situated.[1] Trooper Sardanopoli testified credibly about what he saw and he had an objective justification for making the traffic stop.

The Court now turns to Defendant's alleged failure to activate his vehicle's turn signal when he turned right onto Ellis Avenue. With respect to Defendant's alleged failure to activate the turn signal, Trooper Sardanopoli testified that the "vehicle proceeded to turn right onto Ellis Avenue, which would be heading north, and prior to doing so it didn't use a turn signal." Trooper Sardanopoli further testified "so based on both violations, I was in the passenger's seat, generally I'm in control of all radio transactions as Trooper Holquin was driving. I – we activated the lights, I went over to our comm center to notify our comm that we had a motor vehicle we

---

[1] According to both the Government and Defense, "the corner of South 20th Street facing north, the direction in which Williams approached the intersection, is not marked with a stop line or crosswalk. Defense Exhibits (Def. Ex.") 1 & 6. It is, however, bound by a sidewalk on both

were going to make a motor vehicle stop on." Defendant did not raise the failure to activate the turn signal in his January 7, 2013, statement in support of suppression of evidence, even though he had been cited for it at the time of the traffic stop. When questioned about his failure to do so at the suppression hearing, Defendant testified that he was "pressed for time" when writing the statement in support of suppression but that he knows he used his turn signal. The Court finds the testimony of Trooper Sardanopoli on Defendant's failure to activate the vehicle's turn signal to be credible. His testimony is consistent with both the police report and the summons issued to Defendant at the police station for failure to activate a turn signal prior to making a right onto Ellis Avenue.

The Court finds that an objective review of the facts reveals that the officers had a reasonable basis to believe that Defendant had violated two New Jersey statutes, failure to observe a stop sign in violation of N.J.S.A. 39:4-144, and failure to activate a turn signal in violation of N.J.S.A. 39:4-126, and thus had an objective justification for the traffic stop. Having concluded that the traffic stop was not unlawful, the Court must now turn to determining whether the seizure of Defendant's handgun was also lawful.

### B. The Seizure of Defendant's Firearm

"If police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object, *i.e.*, if

---

sides. *Id.*" Government Brief, p. 7, October 9, 2013.

its incriminating character [is not] immediately apparent - the plain-view doctrine cannot justify its seizure." *U.S. v. Yamba*, 506 F.3d 251, 257-58 (3d Cir. 2007).

The Government contends that Defendant's firearm was in plain view at the time of the traffic stop. To demonstrate that contraband was lawfully seized from a defendant's vehicle, the Government must satisfy all three requirements of the plain view doctrine: 1) the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; 2) the incriminating character of the evidence must be immediately apparent; and 3) the officer must have a lawful right of access to the object itself. *U.S. v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994).

The Court finds that Trooper Sardanopoli's testimony has satisfied all three elements of the plain view doctrine, *i.e.*, he testified that: 1) he was standing outside the front passenger side of the GMC Yukon and therefore legally was in a position to observe the interior of the Yukon; 2) he observed the gun on the floorboard on the passenger side of the Yukon and having had experience investigating other gun crimes, the incriminating nature of the gun was readily apparent; and 3) he had a lawful right of access to the handgun and did not need Defendant's consent to retrieve it. *Texas v. Brown*, 460 U.S. 730, 739-40 (1983) (finding that there is no legitimate expectation of privacy with respect to the interior of a vehicle that may be viewed from the outside of the vehicle). The Court finds Trooper Sardanopoli's testimony, *i.e.*, that he observed the handgun on the floorboard on the passenger side of the Yukon from the outside of the vehicle, to be credible .

Defendant Williams testified at the suppression hearing that Trooper Sardanopoli could not have seen the handgun from standing outside the vehicle because it was hidden in the center

console under the removable cup holder and the only way you could see the handgun was to remove the cup holder. Defendant testified to this in advance of the Government locating the vehicle and inspecting it. At the continued suppression hearing on September 11, 2013, the photographs of Defendant's Yukon that the Government had taken upon locating the vehicle and which were admitted into evidence, supported both Trooper Sardanopoli's and Defendant's testimonies.

It is apparent to the Court from viewing the photographs that the cup holder is removable just as Defendant testified but it is also clearly obvious that the center console is hollowed out beneath the cup holder and connects with the area behind the center console and that a handgun that had been placed there months earlier, as Defendant testified, could easily overtime have rolled or slid forward to the floorboard on the passenger side beneath the center console to be visible from the outside of the passenger side of the vehicle as Trooper Sardanopoli testified. The Court therefore concludes that the traffic stop and the subsequent seizure of the handgun were both lawful.

## V.    CONCLUSION

For the reasons set forth above, Defendant's motion to suppress the handgun seized from his GMC Yukon is denied. An appropriate Order shall issue.

s/ Faith S. Hochberg  
Hon. Faith S. Hochberg  
United States District Judge